Eric B. Kingsley, CA Bar No. 185123
Kelsey M. Szamet, CA Bar No. 260264
KINGSLEY & KINGSLEY, APC
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone:  818.990.8300
Facsimile:   818.990.2903

Emil Davtyan, CA Bar No. 299363
DAVTYAN PROFESSIONAL LAW CORPORATION
21900 Burbank Blvd., 3rd Floor
Woodland Hills, CA 91306
Telephone:  818.992.2935
Facsimile:   818.975.5525

Attorneys for Plaintiff and the Proposed Class

Patricia A. Matias, CA Bar No. 254125
patricia.matias@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA 92626
Telephone:  714.800.7900
Facsimile:   714.754.1298

Attorneys for Defendant CHURCH & DWIGHT CO., INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| CRISHANDA PATTON, an individual, on behalf of herself, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHURCH & DWIGHT CO., INC.,<br><br>Defendant. | Case No. 5:18-CV-00903<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>District Judge: Michael W. Fitzgerald<br>Magistrate Judge: Kenly Kiya Kato<br><br>Action Filed: April 30, 2018 |

FINAL Joint
Motion for

# **TABLE OF CONTENTS**

**Contents**

I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND.................1

II.   SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS ...................2

    A.    Monetary Recovery ........................................................................2

    B.    The Release ....................................................................................3

    C.    The Settlement Mechanism ............................................................4

III.  THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT ...............................4

    A.    The Settlement Class Should be Certified ..........................................5

        1.    All Four FRCP 23(a) Criteria are Met. ....................................5

        2.    The FRCP 23(b)(3) Criteria are Met.........................................8

    B.    The Proposed Settlement is Fair, Just and Adequate. ..........................9

        1.    The Settlement is Fair. ........................................................ 10

        2.    The Settlement is Reasonable. ............................................... 12

        3.    The Settlement is Adequate. .................................................. 14

    C.    The Notice and Claim Form Adequately Inform Class Members of the Settlement and Their Rights Thereunder. ................ 15

IV.   CONCLUSION........................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377 (C.D. Cal. 2007) ..................... 10

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D. Cal. 2008) ........................................ 4, 6

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) ............................... 15

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) .............................. 4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................. 6, 7, 8

*Hillson v. Kelly Services*, No. 2:15cv10803, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017) ................................................................................................................ 13

*In re Activision Securities Litigation,* 723 F. Supp. 1373 (N.D. Cal. 1989) ...... 11, 12

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1994) ............. 11

*In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d 1053 (N.D. Cal. 2007) .............................................................................................................. 9

*Koehl v. Verio,* 142 Cal. App. 4th 1313 (2006) ...................................................... 12

*League of Martin v. City of Milwaukee*, 588 F. Supp. 1004 (E.D. Wis. 1984) .......... 12

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234 (9th Cir. 1998).............................. 14

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ................................................................................................................ 8, 9

*Marchioli v. Pre-Employ.com, Inc*., Case No. 16-2305, 2017 U.S. Dist. LEXIS 217648 (C.D. Cal. June 30, 2017) ....................................................................... 13

*Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 1071569 (E.D. Va. Mar. 15, 2016) ................................................................................................. 5

*Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003) ....................................................... 10

FINAL Joint
Motion for

*Moore v. Rite Aid Headquarters Corp.*, No. 13–1515, 2015 WL 3444227 (E.D. Pa May 29, 2015) .................................................................................................. 5

*Offices for Justice v. Civil Service Com'n,* 688 F.2d 615 (9th Cir. 1982).................. 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................ 9

*Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976 (N.D. Cal. Oct. 22, 2008) ................................................ 6

*Spokeo, Inc. v. Robins*, 578 U.S. ---, 136 S.Ct. 1540 (2016)...................................... 13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................... 6

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943 (9th Cir. 1976) ............................... 14

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977)............................... 11

*Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp.3d 852 (M.D. Pa. 2015) .......................... 5

*Young v. Katz,* 447 F.2d 431(5th Cir. 1971) ............................................................... 14

**Statutes**

15 U.S.C. §1681b................................................................................................. 3, 6

**Other Authorities**

Fair Credit Reporting Act, 15 U.S.C. § 1681 ............................................................ 1

*Manual for Complex Litigation* § 21.62 .............................................................. 9, 15

*Manual for Complex Litigation* § 21.632 ........................................................... 4, 10

*Newberg on Class Action* § 14:6 (4th ed. 2008)....................................................... 11

*Newberg on Class Actions* § 11.41 ........................................................................... 14

**Rules**

Fed. R. Civ. P. 23(e)(2).................................................................................. 1, 8, 9

FRCP 1......................................................................................................................... 14

FINAL Joint
Motion for

Plaintiff CRISHANDA PATTON, an individual ("Plaintiff"), on behalf of herself, and on behalf of all persons similarly situated, through her attorneys of record ("Class Counsel"), and Defendant CHURCH & DWIGHT CO., INC. ("Defendant"), through its attorneys of record, submit this Motion for Preliminary Approval of Class Action Settlement regarding the allegations in Plaintiff's Complaint (the "Lawsuit"), which asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"). Plaintiff and Defendant (collectively "the Parties"), reached an agreement to settle the Lawsuit. Under Federal Rules of Civil Rule (FRCP"), Rule 23(e), the Parties ask this Court for its preliminary approval of the Parties' "Class Action Release and Settlement Agreement" ("Settlement" or "Settlement Agreement"), which is concurrently submitted as Exhibit 1 to the Declaration of Kelsey M. Szamet at ¶ 72. (Szamet Dec.)

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On April 30, 2018, Plaintiff filed her Complaint in the United States District Court for the Central District of California, alleging two causes of action as putative class actions under the FCRA. (ECF No. 1). More specifically, Plaintiff alleged Defendant failed to make proper disclosures as required under the FCRA because it included extraneous materials in its standardized disclosures, and thus failed to obtain proper authorizations regarding certain consumer report information it obtained about putative class members ("Class Members")[1].

The Court issued a Notice to Parties of Court-Directed ADR Programs. (ECF No. 5.) Thereafter, the Parties' agreed to mediate. On November 21, 2018, the Parties jointly notified the Court they settled Plaintiff's claims, including her class action allegations.[2] (ECF No. 13.) On November 28, 2018, the Court issued a Minute Order

---

[1] As defined in the Settlement.

[2] Before their scheduled mediation, the Parties informally resolved the Lawsuit.

setting a hearing for January 7, 2019, vacating all other dates and deadlines, and providing that appearances would not be necessary if the Parties submitted a motion requesting preliminary settlement approval before January 7, 2019. (ECF No. 14.) In response to that Minute Order, the Parties jointly submit the present motion.

The Settlement Class, which includes approximately 3,199 individuals, is defined as: "all individuals in the United States of America who filled out Defendant's 'standard application form' permitting Defendant to obtain a consumer report verifying applicants' background and experience during the Class Period." *See* Settlement at ¶ 1(x). The "Class Period" is April 30, 2013 to April 30, 2018. *See* Settlement, ¶ 1(f).

## II.    <u>SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS</u>

### A.    <u>Monetary Recovery</u>

The Settlement provides a maximum recovery of $300,000.00 (the "Global Settlement Fund"). Settlement at ¶12(c). If the Court approves the Settlement, the following estimates the breakdown of payments from the Global Settlement Fund:

- $170,000 for estimated settlement funds to the Settlement Class (the "Net Settlement Fund");

- $25,000 for administration costs regarding the Settlement;

- $5,000 for a Service Award to Plaintiff; and

- $100,000 for attorneys' fees and expenses (the "Class Counsel Award").

*Settlement* at ¶¶ 12(c), 12(d), 12(h), 14; Szamet Dec. at ¶ 8. The amount of the Net Settlement Fund is contingent on the number of consumer reports obtained on individuals who remain in the Settlement Class. *Id.* at 12(d). The number of consumer reports obtained for each Settlement Class member may differ, and thus Settlement Class members may be entitled to more, or less, than others, based on the number of consumer reports obtained for each of them. As of December 31, 2018, with Defendant's class data finalized, Defendant has determined that there are 2,984 Class Members, with respect to whom 3,034 consumer reports were

obtained. Based on this data, the Parties anticipate the approximate payment per consumer report to be $ 56.03.[3] Szamet Dec. ¶11.

This is a non-reversionary, total payout Settlement. Any funds remaining in the Global Settlement Fund due to uncashed Settlement checks (after a 180-day negotiability period) will be remitted to a charitable organization as agreed by the Parties, or, if they are unable to agree, to one designated by the Court. Settlement at ¶ 12(l).

Class Members (*i.e.*, those who do not opt of the Settlement) wanting to participate in the Settlement *need not do anything. See* Settlement at ¶ 17; see Proposed Notice, attached as Exhibit 1 to the Settlement Agreement, at Szamet Dec. ¶72. Individuals in the Settlement Class who do not want to participate in the Settlement may submit to the Settlement Claims Administrator a Request for Exclusion. Settlement, ¶ 17; Proposed Notice, pp. 4-5.

B.   The Release

Class Members will release Defendant and others "from any and all claims of any kind whatsoever, whether known or unknown, whether based on common law, regulations, statute, or a constitutional provision, under state, federal or local law, arising out of the allegations made in the Action and that reasonably arise, or could have arisen, out of the facts alleged in the Action as to the Class Members, including, but not limited to, claims arising from the procurement of a consumer report on them by any of the Released Parties, and any other claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681b, *et seq.*, whether willful, or otherwise, for declaratory relief, statutory damages, punitive damages, costs, and attorneys' fees." Settlement at ¶19. Nothing in the Settlement releases claims that cannot, as a matter

---

[3] To ensure the Settlement Class and Class Counsel are adequately compensated, the Global Settlement Fund may be increased if data reflects the Settlement Class includes significantly more than 3,199 individuals. Settlement at ¶ 12(g) ("To the extent the number of proposed Settlement Class Members increases by more than five percent beyond the original estimate of 3,199 … after the Court grants approval, Defendant will have the option to increase the Global Settlement Fund proportionately.") For example, if the estimated number of individuals in the Settlement Class was understated by seven percent, a seven percent proportionate increase will be made to the Global Settlement Fund."

of law, be released. *Id.*

C.    The Settlement Mechanism

The Parties have agreed that a third-party Settlement Administrator will administer the Settlement claims process. *Id.* at ¶ 13. The Settlement Administrator will send the Settlement Class a Notice explaining the terms and conditions of the Settlement. *Id.* at ¶ 1(p). (A copy of the proposed Notice is attached the Settlement as Exhibit A). After the Notice is mailed, individuals in the Settlement Class will have 60 days to object to, or opt out of, the Settlement. *Id.* ¶¶ 17-18. The Settlement further provides it shall become effective only after the Court holds a final "fairness" hearing and finally approves the Settlement. *Id.* at ¶ 12(b); see also Notice at pp. 2, 5. The proposed Notice advises the Settlement Class about the fairness hearing, their opportunity to attend and be heard. *Id.* At the fairness hearing, the Parties will be prepared to address any concerns raised by Class Members or the Court, and the Court will therefore have a second, more comprehensive opportunity to review and consider the Settlement, as well as any objections to the Settlement.

III.    **THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT**

Class actions are generally subject to a "strong judicial policy" favoring settlement. *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)). Under Rule 23 (e), class action settlements are subject to court approval.

Courts evaluate class action settlements in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage, courts conditionally certify settlement classes, preliminarily approve settlements pending final fairness hearings, and authorize distribution of notices regarding proposed settlements. *Id.* (citations omitted). *See also Manual for Complex Litigation* § 21.632 (2004) (summarizing "preliminary fairness review"). The second stage involves a fairness hearing occurring well

FINAL Joint
Motion for

after notice is provided to the class, thus allowing time for putative class members to submit claims, objections, or requests to opt out. The court then decides if the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the underlying dispute. *Id.* at 659 (citations omitted).

For the reasons set forth below, the Parties submit: (a) a settlement class should be conditionally certified; (b) the Settlement should be preliminarily approved as fair, reasonable, and adequate; and (c) the Notice should be distributed to the Settlement Class.

A.    The Settlement Class Should be Certified

To facilitate the Settlement, the Parties respectfully ask the Court to conditionally certify the following Settlement Class under FRCP 23 (e):

> All individuals in the United States of America who filled out Defendant's 'standard application form' permitting Defendant to obtain a consumer report verifying applicants' background and experience during the Class Period (namely, April 30, 2013 to April 30, 3018).[4]

Settlement at ¶¶ 1(f) and (x). The Parties agree, but only for purposes of the Settlement, the criteria for certifying a settlement class are satisfied. *Settlement* at ¶4; Szamet Dec. ¶34.

### 1.    All Four FRCP 23(a) Criteria are Met.

*FRCP 23(a)(1): The class is so numerous that joinder of all members is*

---

[4] Under the FCRA, claims must be filed within the earlier of (1) "2 years after the date of discovery by the plaintiff of the violation that is the basis" for the FCRA claim, or (2) "5 years after the date on which the violation that is the basis for such liability occurs," without respect to the plaintiff's knowledge of the violation. 15 U.S.C. §§1681p (1)-(2). A plaintiff discovers facts giving rise to a claim when he or she learns the defendant procured a background report after using an allegedly deficient disclosure form. *Wirt v. Bon-Ton Stores, Inc*., 134 F. Supp.3d 852, 858–59 (M.D. Pa. 2015); *see also Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 1071569, at *6 (E.D. Va. Mar. 15, 2016); *Moore v. Rite Aid Headquarters Corp*., No. 13–1515, 2015 WL 3444227, at *8 (E.D. Pa May 29, 2015). Here, the Class Period is premised upon the broader 5-year statute of limitations.

*impracticable*. "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, approximately 3,199 individuals comprise the Settlement Class. *Settlement* at § 12(d). Consequently, numerosity is easily satisfied.

   *FRCP 23(a)(2): There are questions of law or fact common to the Class.* The commonality requirement is liberally construed. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (concluding Rule 23(a)(2) is "permissively" construed). The class' claims must share substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" suffices. *Hanlon,* 150 F.3d at 1019.

   Under the FCRA, an employer, or prospective employer, cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless ... a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). Here, the Settlement Class is all individuals who, between April 30, 2013 and April 30, 2018, in connection with their application for employment with Defendant, completed Defendant's standard form purporting to authorize a consumer report verifying their background and experience. Based on these common factual and legal issues, the Parties submit sufficient commonality exists.

   *FRCP 23(a)(3): Plaintiffs claims are typical of the class' claims.* As with commonality, the typicality standard is "permissive[ly]" applied. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020). More

specifically, it is satisfied when a class representative's claim is "reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.*

In 2017, Defendant employed Plaintiff as a forklift operator at its Victorville, California facility. Plaintiff alleges, during Defendant's application process, she filled out a standardized form labeled "Background Inquiry Release Authorization" that allowed Defendant to obtain a consumer report verifying her background and experience. (ECF No. 1, ¶ 22.) Plaintiff further alleges the standardized form was not merely a disclosure; it included a liability release stating: "I hereby release the Company and its agents and all persons, agencies (named and unnamed), and entities providing information or reports about me from any and all liability arising out of the request for or release of any of the above mentioned information or reports." (ECF No. 1, ¶ 23.) According to Plaintiff, Defendant required all applicants to complete the same form that violated the FCRA's prohibition against including extraneous information in a required disclosure. (ECF No. 1, ¶¶ 24-25.) Although Defendant does not admit these allegations, for purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion sufficient typicality exists.

***FRCP 23(a)(4): Plaintiff and Class Counsel will fairly and adequately protect the class' interests.*** Courts have interpreted this requirement as posing two questions: whether the class representative and her counsel (1) have conflicts of interest with putative class members, and (2) will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases). Plaintiff and Class Counsel do not have interests antagonistic to those of the Settlement Class. To the contrary, Plaintiff shares the same interest—*i.e.*, recovering damages resulting from alleged violations of Defendant's FCRA obligations. Moreover, Class Counsel have extensive experience prosecuting similar such class actions. Szamet Dec. ¶¶ 62-65. Kingsley & Kingsley is experienced in prosecuting and defending employment litigation, and the firm has focused its practice since 2000 on complex litigation including wage and hour and

consumer class action. (Id.) Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Central, and Southern California. (Id.)  A list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet. Thus, Plaintiff and Class Counsel are adequate representatives for the Class.  The firm has diligently and aggressively pursued this action. After factoring in the risks discussed herein, Class Counsel believes that the proposed settlement is fair and reasonable.

### 2.    The FRCP 23(b)(3) Criteria are Met.

To certify a class under FRCP 23(b)(3), a court must find (1) common questions of fact or law predominate over questions affecting individual members of the proposed class, and (2) a class action is a superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). The Settlement easily meets these criteria.

***The predominance requirement is met***. Predominance "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("*Local Joint Executive Bd.*") (quoting *Hanlon,* 150 F.3d at 1022).

Predominance is readily met because, as in numerous other class actions, Plaintiff's claim is premised in her allegation Defendant maintained a uniform policy of providing the Settlement Class with a standardized form facially violating the FCRA. (ECF No. 1, ¶¶ 34-35.) Plaintiff's claim is based on factual and legal questions about Defendant's policy that are not only common to the Settlement Class, but predominate under FRCP 23 (e). These aspects of the case strongly support a finding that the predominance requirement is satisfied. *See, e.g., In re*

*Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d 1053, 1068 (N.D. Cal. 2007); *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).

*Superiority is met.* Whether a class action is a superior method of adjudicating a controversy involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon,* 150 F.3d at 1023. The circumstances here are comparable with those involving the Las Vegas Sands' former casino employees who sought damages for their employer's failure to provide a statutorily required 60-day notice before closure. When affirming the district court's approval of a class action settlement, the Ninth Circuit stated:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, superiority is "easily satisfied." *Id.* For purposes of approving the Settlement, the Parties submit superiority is equally satisfied.

B.    <u>The Proposed Settlement is Fair, Just and Adequate.</u>

Courts weigh several factors when determining if a settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2). *Manual for Complex Litigation* § 21.62. The inquiry has been summarized as follows:

> "Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action

FINAL Joint
Motion for

9

Case No. 5:18-CV-00903

process."

*Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination about fairness, reasonableness, and adequacy. Instead, the key question is whether the Settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry is if the Settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to the Settlement Class informing them about the Settlement. *Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003). *See also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321.

## 1.    The Settlement is Fair.

**Fairness of distribution among Class Members.** The Settlement is fair because the basis for recovery is the same for each Class Member. All individuals comprising the Settlement Class are eligible to receive individual payments from the Net Settlement Fund, and each Class member will be bound by the same release.

**Fairness of proposed attorneys' fees and expenses.** The allocation of the Gross Settlement Fund between Class Members and Class Counsel is also fair because Class Counsel may seek to recover no more than one-third of the Global Settlement Fund in fees. The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Furthermore, the fee request is in line with other attorneys' fees awards for similar actions, particularly when class members do not have to allege or prove they

FINAL Joint
Motion for

suffered injuries.

In class actions, courts have approved attorneys' fee requests couched as a percentage of the "common funds" created by settlements. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund approach "spread[s] litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Moreover, when deciding fee awards, several courts have expressed frustration with an alternative "lodestar" approach, which usually involves wading through voluminous and often indecipherable time records. Commenting on the lodestar approach, in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989), Chief Judge Marilyn Hall Patel wrote:

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the [lodestar] analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

The common fund approach is preferable to the lodestar because it: (1) aligns the interests of class counsel and absent class members; (2) encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Accordingly, courts routinely use the common fund approach when determining fee awards accompany class action settlements (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 37879 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

According to *Newberg on Class Action* § 14:6 (4th ed. 2008): "No general rule can be articulated on what is a reasonable percentage of a common fund.

FINAL Joint Motion for

Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." Historically, courts have awarded fees ranging between 20% and 50% of the common fund. *Id. See also In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Class Counsel's application for one-third of the Global Settlement Fund is thus within the range of reasonableness and fair.

**The proposed Service Award is fair**. Fairness principles favor a $5,000 Service Award for Plaintiff, who prosecuted this action and assisted Class Counsel throughout the litigation of this matter.  Ms. Patton's time incudes researching and identifying competent counsel with relevant expertise, providing information to Class Counsel regarding the claims at issue, compiling documents, conducting several meetings and telephone conferences with her attorneys to discuss the status of the case and the theories of liability, and reviewing all relevant case documents. Szamet Dec. at ¶¶ 69-71.  *League of Martin v. City of Milwaukee*, 588 F. Supp. 1004, 1024 (E.D. Wis. 1984), (concluding it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit). Moreover, Plaintiff incurred personal risk by bringing the Lawsuit; she could have been responsible for Defendant's costs, and her potential employment opportunities may have been impacted by her public prosecution of the Lawsuit. *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (where defendant prevailed at trial, named plaintiffs were found to jointly and severally liable for defendant's attorneys' fees). For these reasons, the Service Award is fair.

## 2.    The Settlement is Reasonable.

There is risk associated with continued litigation, including the prospect that a class might not be certified, or a certified class may be significantly smaller than proposed. In the Lawsuit, of particular importance to determining the reasonableness of the Settlement are the significant liability questions regarding

purported violations of the FRCA.

Defendant likely would have advanced an argument that Plaintiff lacked standing because she did not suffer, or allege, a concrete injury under the Supreme Court's *Spokeo* decision.[5] Furthermore, Defendant would have proffered evidence showing the allegedly non-compliant disclosure was followed by a compliant disclosure Plaintiff signed *before* Defendant obtained a background check. *See*, e.g. *Marchioli v. Pre-Employ.com, Inc*., Case No. 16-2305, 2017 U.S. Dist. LEXIS 217648, at *31-32 (C.D. Cal. June 30, 2017) (plaintiff could not plausibly allege an "informational injury" because she received additional disclosures and notices revealing the employer intended to conduct a background check). Because of the uncertainty regarding FCRA liability, the $300,000 Global Settlement Fund is more than reasonable.

Risks and uncertainties are also present regarding damages. In particular, Plaintiff seeks statutory damages under the FCRA ranging between $100 and $1,000 per violation. Defendant would have certainly argued the alleged violations were technical, and thus did not result in any injuries or damages. For example, in *Hillson v. Kelly Services*, E.D. Mich. No. 2:15cv10803, 2017 WL 279814, at *7-8 (E.D. Mich. Jan. 23, 2017), the court preliminarily approved a settlement awarding $19 to each class member[6] for an alleged FCRA standalone disclosure violation. In *Hillson*, the court assumed each individual class member would recover $100 at trial, and observed, "once the $100 award is discounted by the likelihood of success at trial (which is conceivably in the ballpark of 19%), the amount of recovery under the settlement appears reasonable." *Id*. at *7.

---

[5] *Spokeo, Inc. v. Robins*, 578 U.S. ---, 136 S.Ct. 1540, 1549-50 (2016) (concluding standing requires "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical")(internal quotations omitted).
[6] In *Hillson*, there were two subclasses; members of the subclasses received settlement payments of $41 and $14, respectively, for an average of $19 (based on the number of individuals in each subclass).

Furthermore, while Class Counsel believe Plaintiff's claims are meritorious, they are experienced class action litigators, and understand the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many months or years. Szamet Dec. ¶57. Thus, an important factor courts consider when approving a class action settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice v. Civil Service Com'n,* 688 F.2d 615, 625 (9th Cir. 1982). More specifically, courts weigh the benefits of a proposed settlement against the expense and delay involved in achieving an equivalent, or more favorable, result at trial. *See, e.g., Young v. Katz,* 447 F.2d 431,433-34 (5th Cir. 1971). *See also* FRCP 1 (requiring a just, speedy, and inexpensive resolution of every action).

The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases). This public policy favoring class action settlements applies with particular force here because the Settlement provides Class Members substantial, prompt, and efficient relief.

### 3.    The Settlement is Adequate.

The adequacy of a class action settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes ... . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice,* 688 F.2d at 634 (citation omitted). The Settlement is not to be judged against a speculative measure of what may have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998). Moreover, determining the adequacy of the Settlement "involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Manual for Complex Litigation* §

21.62. An additional consideration is that the Settlement provides for payment to now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

Judged against these standards, the Settlement is more than adequate. The present value of the Settlement far exceeds what the Settlement Class would have likely received if the underlying claims were fully litigated. Likewise, there was a high probability of drawn out litigation and risks the Settlement Class may not have prevailed. Szamet Dec. ¶ 58. For all of these reasons, the Court should preliminarily approve the Settlement.

C.    The Notice and Claim Form Adequately Inform Class Members of the Settlement and Their Rights Thereunder.

A copy of the Parties' proposed class notice is attached to the Settlement as Exhibit A.  See Szamet Dec. ¶72.  The Notice explains the claims in the Lawsuit, the essential terms of the settlement, that class members need to do nothing to recover under the Settlement,  the procedures for requests to be excluded from the Settlement, and how to object to the Settlement. Szamet Dec. ¶ 59. The Notice also advises the Settlement Class about the fairness hearing, Class Members' rights with respect to that hearing, and how to get more information about the Settlement. *Id.*

The Notice packet will also include a Request for Exclusion Form.  That form will likewise be simple and straightforward. Szamet Dec. ¶60. The period for submitting a Request for Exclusion Form is reasonable, as is the time for filing objections; the Settlement Class will have adequate time to (1) digest the information provided in the Notice, and (2) obtain answers to questions about the Settlement.

Accordingly, Plaintiff respectfully asks the Court to approve the proposed Notice and Request for Exclusion Form and authorize the Settlement Administrator to send to the Settlement Class the proposed Notice and Request for Exclusion Form.

FINAL Joint
Motion for

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully ask the Court the Court to preliminarily approve the Settlement, Notice, and Request for Exclusion Form, and authorize the Settlement Administrator to send to the Settlement Class the proposed Notice and Request for Exclusion Form.

DATED: January 8, 2019                    KINGSLEY & KINGSLEY, APC


By: /s/ Kelsey M. Szamet
        Kelsey M. Szamet

Attorney for Plaintiff
CRISHANDA PATTON and the
Proposed Class

DATED: January 8, 2019                    OGLETREE, DEAKINS, NASH, SMOAK
                                          & STEWART, P.C.


By: /s/ Patricia A. Matias
        Patricia A. Matias

Attorneys for Defendant
CHURCH & DWIGHT CO., INC.

FINAL Joint
Motion for

## <u>CERTIFICATE OF AUTHORIZATION</u>

Pursuant to Local Rule 5-4.3.4, I hereby attest that all signatories listed, and on whose behalf this filing is submitted, concur in the contents of this filing and have authorized the filing of this document.

DATED: January 8, 2019                    KINGSLEY & KINGSLEY, APC


By: /s/ Kelsey M. Szamet
     Kelsey M. Szamet

Attorney for Plaintiff
CRISHANDA PATTON and the
Proposed Class


DATED: January 8, 2019                    OGLETREE, DEAKINS, NASH, SMOAK
                                           & STEWART, P.C.


By: /s/ Patricia A. Matias
     John Gerak
     Patricia A. Matias

Attorneys for Defendant
CHURCH & DWIGHT CO., INC.

36930451.1

36930451.1

FINAL Joint
Motion for